# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RANDY S. ZIMMERMAN,** | : | CIVIL ACTION NO. 1:08-CV-0538 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **ALLEN D. BIEHLER, P.E.,** | : | |
| **NAOMI WYATT**, and **DONNA** | : | |
| **HOSKINS-HELM,** | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Randy S. Zimmerman ("Zimmerman"), a former employee of the Commonwealth of Pennsylvania Department of Transportation ("PennDOT"), brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and 42 U.S.C. § 1983, which imposes civil liability upon any individual who deprives another of a constitutionally-protected right under the color of state law. Zimmerman alleges that he was "regarded as having" a disability within the meaning of the ADA. (Doc. 1 ¶ 56.) Zimmerman also claims that the Pennsylvania State Employee Assistance Program ("SEAP") violates the ADA, in that it requires medical examinations which are not job-related and consistent with business necessity, and is unconstitutional, both on its face and as applied in his case, in that it fails to afford procedural due process. Finally, Zimmerman complains that "his involuntary admission to the SEAP program was in retaliation for the exercise of [his] First Amendment rights." (Id. at ¶ 62.) The defendants in this action are Allen D. Biehler ("Biehler"), Secretary of the Pennsylvania

Department of Transportation;[1] Naomi Wyatt ("Wyatt"), Secretary of the Pennsylvania Office of Administration; and Donna Hoskins-Helm ("Hoskins-Helm"), chief of the Workplace Support Services Division in the Office of Administration. Presently before the court is defendants' motion for summary judgment (Doc. 29). For the reasons that follow, the motion will be granted.

## I.   **<u>Statement of Facts and Procedural History</u>**[2]

On February 13, 2006, plaintiff became a permanent employee of PennDOT. (Doc. 30 ¶ 2; Doc. 40 ¶ 2.) A collective bargaining agreement governed his employment. (Doc. 30 ¶¶ 44-46; Doc. 40 ¶¶ 44-46.) In an evaluation of his work performance from February through July of 2006, plaintiff received satisfactory ratings in every category except "Work Habits" and an overall rating of satisfactory. (Doc. 30 ¶¶ 9-10; Doc. 40 ¶¶ 9-10.) On October 4, 2006, plaintiff attended a pre-disciplinary conference regarding allegations that he behaved inappropriately and used inappropriate language with a supervisor. (Doc. 30 ¶ 12; Doc. 40 ¶ 12; Doc. 31, Ex. A at 28-31.) Plaintiff attended a second pre-disciplinary conference on November 9, 2006, to address allegations that he violated PennDOT's Internet/email user policies. (Doc. 30 ¶ 15; Doc. 40 ¶ 15.) At both of these pre-disciplinary

---

[1] Plaintiff states that he "does not challenge the Motion as to Defendant Allen D. Biehler." (Doc. 45 at n.2.) Therefore, the court will grant summary judgment with respect to Biehler without further discussion.

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party. See infra Part II.

2

conferences, plaintiff had an opportunity to respond to the allegations against him. (Doc. 30 ¶¶ 13, 16; Doc. 40 ¶¶ 13, 16.) In addition, a union representative accompanied plaintiff to both pre-disciplinary conferences. (Doc. 30 ¶¶ 11, 14; Doc. 40 ¶¶ 11, 14.) On November 15, 2006, plaintiff sent an email to Deputy Secretary Betty Serian ("Serian"), which contained references to her "co-conspirators," to workplace harassment he claimed to be experiencing, and to alleged "civil rights violations and felonies" committed against him. (Doc. 30 ¶¶ 51-52; Doc. 40 ¶¶ 51-52.) Plaintiff attended a third pre-disciplinary conference on or about November 17, 2006, to address the allegations that he engaged in inappropriate behavior by sending the email, as well as allegations that he was absent from work without leave. (Doc. 30 ¶ 19; Doc. 40 ¶ 19.) Again, at the pre-disciplinary conference, plaintiff was accompanied by a union representative and afforded an opportunity to respond to the allegations. (Doc. 30 ¶¶ 18, 20; Doc. 40 ¶¶ 18, 20.) As a result of plaintiff's email to Serian, and as a result of the answers he gave during the pre-disciplinary conference, PennDOT personnel recommended that his be referred to SEAP for an independent psychological examination ("IPE").[3] (Doc. 30 ¶ 48; Doc. 40 ¶ 48.) At least one of plaintiff's superiors was concerned that plaintiff was delusional. (Doc. 30 ¶¶ 4-5, 55; Doc. 40 ¶¶ 4-5, 55.)

---

[3] When an agency of the Commonwealth of Pennsylvania wishes to refer an employee for an IPE, the chief of the Workplace Support Services Division in the Pennsylvania Office of Administration will gather information from the agency and decide whether the IPE referral is appropriate. (Doc. 30 ¶¶ 23, 25-26.) In the instant case, defendant Hoskins-Helm held this position. (Doc. 30 ¶ 23.)

Dr. Christopher Ziegler evaluated plaintiff in the IPE process. (Doc. 30 ¶ 58; Doc. 40 ¶ 58.) He initially concluded that plaintiff was unfit for his position and recommended that plaintiff take medication to stabilize his thought processes. (Doc. 30 ¶ 59; Doc. 40 ¶ 59.) Dr. Ziegler referred plaintiff to Dr. Ali Ahmed, who prescribed medication for him. (Doc. 30 ¶ 67; Doc. 40 ¶ 67; Doc. 35, Ex. F at 9.) Plaintiff did not consistently take his medication as prescribed, and he continued expressing delusional ideas. (Doc. 31, Ex. A at 84-88; Doc. 35, Ex. F at 14-15.) Plaintiff stopped attending his appointments with Dr. Ahmed in June of 2007. (Doc. 30 ¶ 70; Doc. 40 ¶ 70.) Between June and December of 2007, PennDOT sent several letters to plaintiff regarding his benefits and options with respect to use of leave, but plaintiff neglected to respond to PennDOT or make any decisions about his benefits or available leave. (Doc. 30 ¶¶ 71-72; Doc. 40 ¶¶ 71-72.) By letter dated January 14, 2008, PennDOT notified plaintiff that he had been "administratively removed" from his position after exhausting all entitlements under the collective bargaining agreement.[4] (Doc. 31, Ex. A-7.)

Plaintiff filed the instant suit on March 24, 2008. (Doc. 1.) Defendants thereafter filed a motion for summary judgment (Doc. 29) asserting that plaintiff failed to state a claim under the ADA, the Due Process Clause, or the First Amendment. The parties have fully briefed these issues, which are now ripe for disposition.

---

[4] Plaintiff never returned to work after he was referred to SEAP, and no discipline was imposed for the issues addressed in the three pre-disciplinary conferences. (Doc. 30 ¶¶ 21; Doc. 40 ¶¶ 21.)

4

## II. Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

Plaintiff alleges that he was "regarded as having" a disability under the ADA. Plaintiff also contends that SEAP violates the ADA and unlawfully infringes the right to procedural due process. In addition, plaintiff claims that he was referred to SEAP in retaliation for the exercise of his right to free speech. The court will first address plaintiff's ADA claim. It will then turn to his claims under the Fourteenth Amendment and the First Amendment.

### A. ADA Claim

Plaintiff alleges that he "was regarded as having a mental impairment that substantially limits one or more . . . major life activities . . . within the meaning of the Americans with Disabilities Act." (Doc. 1 ¶ 56); see also 42 U.S.C. § 12102. In addition, plaintiff argues that the application of SEAP in his case violated the ADA because it required a psychological examination which was neither job-related nor consistent with business necessity. See 42 U.S.C. § 12112(d)(4)(A). Defendants contend that plaintiff has failed to exhaust administrative remedies. Defendants also assert that there is no individual liability under the ADA.[5] The court will address these issues *seriatim*.

#### 1. Failure to Exhaust Administrative Remedies

An ADA claimant must exhaust his administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC) prior to bringing a civil action in court. See 42 U.S.C. § 12117(a) (adopting the procedures of

---

[5] Defendants contend that plaintiff's ADA claim fails on the merits. Specifically, defendants assert that the IPE was both job-related and consistent with business necessity. Defendants rely upon the language of 42 U.S.C. § 12112(d)(4)(B), which permits employers to "make inquiries into the ability of an employee to perform job-related functions," and allows medical examinations that "are part of an employee health program." See also 29 C.F.R. §§ 1630.13(b), 1630.14(c). The court's disposition of defendants' other arguments obviates the need to address this topic.
    Nevertheless, the court observes that plaintiff has not presented a *prima facie* case for disability-based discrimination. Despite plaintiff's allegation that he was regarded as having a disability, plaintiff inexplicably states that he "does not allege discrimination." (Doc. 45 at 12.) Thus, the court has no reason to consider the merits of a claim that plaintiff was the victim of discrimination on the basis of a perceived disability under the meaning of the ADA.

6

Title VII of the Civil Rights Act of 1964 for ADA claims); 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1614.105(a); see also Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999). A plaintiff who does not do so in a timely manner will be barred from suit, unless he or she can establish a justification for bypassing the exhaustion requirement, such as waiver or tolling. See Wilson v. MVM, Inc., 475 F.3d 166, 174-75 (3d Cir. 2007) (holding that the exhaustion requirements of the Rehabilitation Act—another law under which the procedures of Title VII apply—are prudential requirements, not jurisdictional prerequisites); Buck v. Hampton Township School Dist., 452 F.3d 256, 262 (3d Cir. 2006) (holding that the exhaustion requirements of the ADA and Title VII are prudential).

In the case *sub judice*, plaintiff fails to come forward with evidence that he satisfied the exhaustion requirement. Plaintiff's brief in opposition to the pending motion alleges that plaintiff "filed his Questionnaire with the E.E.O.C. on August 29, 2007," (Doc. 45 at n.15), but no evidence of record proves that plaintiff filed a timely ADA claim at the administrative level or that an agency authorized plaintiff to bring the instant suit. Plaintiff also contends that "[t]his is not an action for damages, but for injunctive and declaratory relief." (Id.) Plaintiff cites no authority for the premise that exhaustion of administrative remedies is not required if a claimant seeks only injunctive and declaratory relief. In light of authority to the contrary, see, e.g., Freed v. CONRAIL, 201 F.3d 188, 191 (3d Cir. 2000) (holding that, in order to bring a suit "for injunctive relief and/or damages" under the RA, a plaintiff must "exhaust administrative remedies," according to the procedures governing Title VII

7

suits), the court will reject plaintiff's contention.  Hence, summary judgment in defendants' favor is warranted.

### 2. **Lack of Individual Liability**

Defendants contend that there is a "general consensus among courts" holding that "there is no individual liability at all under the ADA." (Doc. 36 at 6.) Thus, as each defendant in the instant case is an individual, defendants argue that there can be no liability even if plaintiff did exhaust his administrative remedies. Plaintiff has failed to respond to defendants' argument on the issue of individual liability.  Defendants correctly observe that the Third Circuit has stated in dicta that "there appears to be no individual liability for damages under Title I of the ADA."[6] Koslow v. Commonwealth of Pa., 302 F.3d 161, 178 (3d Cir. 2002).  In the instant case, however, plaintiff does not merely seek back pay and attorney's fees; plaintiff also requests declaratory and injunctive relief.  Defendants also note that the Third Circuit has favorably acknowledged the broader holdings of other courts of appeal that "individuals are not liable under Title I and II of the ADA . . . ." Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002).  There is also a consensus among district courts in this circuit that individuals may not be held liable under

---

[6] Title I of the ADA prohibits disability-based discrimination in the context of employment.  See 42 U.S.C. § 12112.  Title II of the ADA "prohibits a 'public entity' from discriminating against a 'qualified individual with a disability' on account of [his or her] disability." Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 208 (1998) (citing 42 U.S.C. § 12132).  Title III "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations . . . and public transportation services . . . ." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128 (2005) (citing 42 U.S.C. § 12182 and 42 U.S.C. § 12184).

8

the ADA. See McQuaid v. Acts Retirement Communities Southampton Estates, No. Civ. A. 04-3620, 2005 WL 2989642 at *2 (E.D. Pa. Aug. 8, 2005); McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 398 (E.D. Pa. 2002); Douris v. Schweiker, 229 F. Supp. 2d 391, 397 (E.D. Pa. 2002). The court is persuaded by these decisions and finds that there is no liability under the ADA against individuals who do not otherwise qualify as an entity covered by the ADA (e.g., an "employer"). Accordingly, summary judgment in favor of the defendants is warranted.

### B. Procedural Due Process Claim

Plaintiff advances a claim pursuant to 42 U.S.C. § 1983,[7] alleging that defendants deprived him of his right to procedural due process guaranteed by the Fourteenth Amendment. Defendants argue that plaintiff cannot establish a claim that they deprived him of due process because he cannot demonstrate their personal involvement and because he cannot state a due process claim on the merits. The court will address defendants' arguments in turn.

---

[7]Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

### 1. **Failure to Establish Personal Involvement**

In claims under § 1983, "liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). In order to be liable under § 1983, a defendant must have "personal involvement" in the deprivation of the claimant's rights, which can be shown by "allegations of personal direction or of actual knowledge and acquiescence." Id. Claimants must make such allegations with "appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

In the case *sub judice*, plaintiff has failed to present any evidence of personal involvement against Beihler or Wyatt; indeed, plaintiff does not challenge the pending motion for summary judgment as to Beihler, and the court will grant summary judgment in his favor.[8] In the absence of evidence against Wyatt,[9] the court must grant summary judgment in her favor as well, because plaintiff has failed to come forward with sufficient proof of her involvement in the alleged misconduct. See, e.g., Anderson, 477 U.S. at 257 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

---

[8] See supra note 1.

[9] Plaintiff states that "the Secretary of the Office of Administration issues and manages the SEAP Handbook with its attendant procedures," (Doc. 45 at 12-13), but he provides no evidence supporting this allegation.

With respect to Hoskins-Helm's involvement, however, plaintiff's evidence is adequate to give rise to a genuine issue of fact. The evidence of record establishes that Hoskins-Helm approved plaintiff's referral to SEAP. (Doc. 30 ¶ 56; Doc. 40 ¶ 56.) This evidence supports a finding that she personally directed the referral, or, at a minimum, that she knew and acquiesced to it. Moreover, Hoskins-Helm testified that her office, the Workplace Support Services Division, "writes the policies and procedures" for SEAP, (Doc. 32, Ex. C at 15), suggesting her personal connection to the alleged constitutional infirmities of the SEAP program. The court cannot find that plaintiff's evidence of Hoskins-Helm's involvement would be insufficient, as a matter of law, to sustain a result in his favor. Therefore, the court declines defendants' invitation to grant summary judgment with respect to Hoskins-Helm on this basis, and it will turn to the merits of plaintiff's § 1983 claim against her.

**2.    Failure to State a Claim**

Section 1983 provides for civil liability when official action causes a "deprivation of rights protected by the Constitution." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). However, § 1983 is not an independent source of substantive rights. Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Rather, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp, 95 F.3d at 1204; see also Collins v. City of Harker Heights, 503 U.S. 115, 119 (1992) (stating that § 1983 "does not provide a remedy for abuses that do not violate

11

federal law"). In order to establish a § 1983 claim, a plaintiff must demonstrate, first, the deprivation of a constitutional right, and, second, that a "person acting under the color of state law" is responsible for the alleged deprivation. Kneipp, 95 F.3d at 1204 (internal citations omitted); Collins, 503 U.S. at 120.

In the pending matter, plaintiff complains that he was deprived of his constitutional right to procedural due process. To prevail on a procedural due process claim, a plaintiff must demonstrate that a liberty or property interest was taken in a procedurally deficient manner. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). It is undisputed that, under the collective bargaining agreement, plaintiff had a property interest in his continued employment. Thus, the court turns to the question of whether plaintiff was deprived of this interest without due process.

Under Third Circuit precedent, a public employee may not raise a procedural due process claim against his or her employer when grievance and arbitration procedures are in place, because the requirements of due process are satisfied, "even if the hearing conducted by the Employer . . . [was] inherently biased." Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir. 1983)). In the instant case, the collective bargaining agreement provided plaintiff with a five-step review of grievances. (Doc. 30 ¶¶ 43, 46; Doc. 40 ¶¶ 43, 46.) Plaintiff complains that he lacked "the ability to grieve a decision by a psychologist, like Dr. Ziegler, to refuse to certify [him] as fit for duty." (Doc. 45 at n.14.) However, plaintiff could have filed a

12

grievance regarding his referral for an IPE, and the court finds no basis to conclude that this procedure would fail to satisfy the due process clause. Plaintiff presents no legal authority that due process requires an opportunity to grieve or appeal the decision of an independent psychologist, or that the opportunity to grieve one's referral for a psychological evaluation is inadequate to provide due process, and the court is not persuaded by plaintiff's unsupported arguments to that effect.[10] Furthermore, plaintiff's failure to pursue the procedures available to him belies his claim that defendants deprived him of his right to procedural due process. See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."). Therefore, defendants are entitled to summary judgment on plaintiff's due process claim.

---

[10] Not only is the court unaware of any legal authority supporting plaintiff's position, defendants have directed the court's attention to a Sixth Circuit case to the contrary. In Collyer v. Darling, the Sixth Circuit evaluated the predeprivation process that a state institution provided to one of its employees, and it concluded that "Loudermill [v. Cleveland Board of Education, 470 U.S. 532 (1985),] and its progeny do not require any more than adequate explanation of the reasons for the employer's action. Thus, it was sufficient for the [state institution] to inform [the plaintiff] that he was being 'suspended' because the doctor determined him unfit due to a medical condition." 983 F.3d 211, 224 (6th Cir. 1996). The Collyer court went on to conclude that the plaintiff also had adequate postdeprivation process available to him. Id. at 224, 227. Notably, that plaintiff's employment was, like Zimmerman's, "governed by a collective bargaining agreement providing a five-step grievance procedure," and the grievance procedure "culminated with final and binding arbitration." Id. at 225.

13

## C. First Amendment Claim

The complaint alleges that plaintiff "had done nothing more serious than engage in speech protected by the First Amendment to the United States Constitution," (Doc. 1 ¶ 16), and that "his involuntary admission to the SEAP program was in retaliation for the exercise of [his] First Amendment rights," (id. at ¶ 62.) In the pending motion for summary judgment (Doc. 29), defendants contend that plaintiff fails to state a claim under the First Amendment. Defendants argue that plaintiff has failed to show sufficient personal involvement of the defendants to establish liability under § 1983[11] and that plaintiff's speech is not protected by the First Amendment, because it was merely a personal grievance, not citizen speech on a matter of public concern. Plaintiff fails to counter defendants' arguments; he merely reiterates his position that he "had done nothing more serious than engage in harmless speech presumably protected by the First Amendment . . . ." (Doc. 45 at 2.) Plaintiff's bald allegation, unsupported by any affirmative evidence, is plainly insufficient to establish his right to relief under the First Amendment. See, e.g., Anderson, 477 U.S. at 252 ("[T]here must be evidence on which the jury could reasonably find for the plaintiff"). Hence, without further discussion, the court will grant summary judgment with respect to plaintiff's First Amendment claim.

---

[11] See supra Part III.B.1.

## IV. Conclusion

Summary judgment is warranted with respect to plaintiff's ADA claims because plaintiff failed to exhaust his administrative remedies and because the defendants, as individuals, cannot be liable under the ADA. Defendant Wyatt is entitled to summary judgment on plaintiff's § 1983 claim because plaintiff failed to demonstrate her personal involvement in the alleged deprivation of his right to due process. Plaintiff cannot make out a due process claim against the remaining defendant, Hoskins-Helm, because he cannot establish that the procedures available to him fall short of due process. Plaintiff also fails to demonstrate any deprivation of his First Amendment rights. Therefore, the court will grant defendants' motion for summary judgment.

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: December 8, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RANDY S. ZIMMERMAN,** | : | CIVIL ACTION NO. 1:08-CV-0538 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **ALLEN D. BIEHLER, P.E.,** | : | |
| **NAOMI WYATT, and DONNA** | : | |
| **HOSKINS-HELM,** | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 8th day of December, 2009, upon consideration of defendants' motion for summary judgment (Doc. 29), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 29) is GRANTED. See FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiffs on all claims.

3. The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge